IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| RAQUEL LENZIE, ) | Case No. 24-01850-TOM-7 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION AND ORDER

This bankruptcy case came before the Court on May 22, 2025, for a hearing on the Motion to Reopen[1] (Doc. 69, the "Motion") filed by Central State Bank and the Amended Response in Opposition to Motion to Reopen Bankruptcy Case (Doc. 74, the "Amended Response") filed by the Debtor. Appearing before the Court were Burt Newsome, attorney for Central State Bank, and Paula Greenway, attorney for the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a), and the District Court's General Order of Reference dated July 16, 1984, as amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A), (O).[3] The Court has considered the pleadings, the arguments, and the law, and finds and concludes as follows.[4]

---

[1] The document filed by Central State Bank was titled "Motion to Reopen Debtor's Chapter 7 Case and to Order Debtor to Surrender Collateral and to Order Debtor to Cease State Court Proceedings in an Effort to Retain Collateral in Violation of 11 U.S.C. [sic] 521(a)(2)(B) and to Revoke Debtor's Chapter 7 Discharge. Because Central State Bank sought in the Motion relief that would not be available unless this Court first reopened the case, this Court concluded that the Motion should be treated only as a motion to reopen the Debtor's case. *See* Doc. 70.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. §157(b)(2)(A) and (O) provide as follows:
> (b)(2) Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate;
> . . . .
> (O) other proceedings affecting the liquidation of the assets [.]

[4] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

# FINDINGS OF FACTS[5]

The Debtor filed her Chapter 7 case on June 18, 2024 and received a discharge on September 16, 2024. The Debtor's schedules indicated she owned a home in Birmingham valued at $675,000 that secured a debt to Central State Bank in the amount of $265,000.[6] Doc. 1. Every Chapter 7 debtor who owns property securing a debt or who has unexpired leases must complete the Statement of Intention for Individuals Filing Under Chapter 7. This form requires that for each secured debt the debtor must indicate if she will:

> ☐ Surrender the property.
> ☐ Retain the property and redeem it.
> ☐ Retain the property and enter into a *Reaffirmation Agreement*.
> ☐ Retain the property and [explain]:

*See* Doc. 1 at 58 (Official Form 108, Statement of Intention for Individuals Filing Under Chapter 7). In this case, with regard to the Central State Bank debt, the Debtor chose the option "Retain the property and [explain]" but neglected to actually explain what she intended to do. *Id*. Central State Bank obtained relief from the automatic stay on August 19, 2024. The Debtor received her discharge on September 16, 2024, and her bankruptcy case was closed on March 26, 2025. According to the Motion, the Debtor never reaffirmed the debt or redeemed the property while her case was pending.

The Motion reflects that Central State Bank foreclosed on the property on October 8, 2024. Central State Bank brought a state court action against the Debtor for possession on October 28, 2024, after the Debtor's discharge but prior to the bankruptcy case being closed. The Motion further reflects that on November 26, 2024 the Debtor asserted counterclaims against Central State

---

.
[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir. 1975).
[6] The schedules further indicate that the home secures a debt to Regions Bank in the amount of $653,473.

Bank in the state court proceeding. According to the parties the state court case is still pending. It appears that the Debtor continues to retain possession of the property.

Central State Bank filed its Motion on May 2, 2025.[7] On May 5, 2025, the Debtor filed her Amended Response. In her Amended Response, the Debtor directs the Court's attention to *In re Sanchez,* Case No. 23-81213-CRJ7, a bankruptcy case filed in the Bankruptcy Court for the Northern District of Alabama, Northern Division. In *Sanchez*, a mortgage creditor filed a similar motion to reopen with similar facts. The motion in *Sanchez* was filed by the same attorney currently representing Central State Bank.[8] In *Sanchez*, the debtor indicated on his schedules that he would reaffirm the debt secured by his home; however, he apparently failed to do so and the mortgage creditor obtained relief from the stay. Doc. 77-4, at 2. The mortgage creditor brought an action in state court to obtain possession of the property. *Id.* at 3. The debtor filed counterclaims against the creditor in the state court action, and the mortgage creditor filed a motion to reopen the bankruptcy case. *Id.* On December 4, 2024, Judge Clifton R. Jessup, Jr. held a hearing on the creditor's motion to reopen. Judge Jessup remarked:

> THE COURT: Okay. Mr. Newsome, here's the problem. Your client obtained relief from the stay when the case was pending. There was an administration and so on. After that time the discharge was obtained by the debtor and the case was closed and your client obtained a foreclosure in the State Court. Apparently, it's not going well, so you want me to reopen the case, order the debtor to take certain actions, which I don't know what the legal authority is and to revoke the discharge when there's been no proper setting for that.
> Everything you're asking the Court to do is extra judicial in a closed Chapter 7 case after the discharge and I don't see any basis, no cause, to reopen the case.
> . . . .

---

[7] As discussed in more detail later in this Memorandum Opinion and Order, the Court notes that Central State Bank's Motion was filed with this Court after counsel for Central State Bank had filed a very similar motion on behalf of a different creditor in the Bankruptcy Court for the Northern District of Alabama, Northern Division. Judge Clifton R. Jessup, Jr. denied the motion, and on appeal, Judge R. David Proctor in the District Court for the Northern District of Alabama affirmed Judge Jessup's ruling. Despite this, counsel for Central State Bank filed the Motion now before this court.

[8] The motion to reopen referenced by Debtor's counsel is located at Doc. 94, and amended by Doc. 95, in *In re Sanchez*, Case No. 23-81213-CRJ7.

3

> THE COURT: . . . [T]he duties under 521(a) cease when the estate ends. Certain things are only in effect when the estate of – this is my understanding of the law – when the estate is there certain duties are there, including the automatic stay. When the case is closed and the discharge happens, the estate ceases to exist and so those duties, which haven't been performed before cease to exist, the automatic stay ceases to exist so that's where we are.
>
> MR. NEWSOME: Well and there was also another component to what I filed where everything they allege in State Court all occurred pre-petition or while the case was ongoing and none of those causes of action were ever disclosed to the Trustee and they really vest in the Trustee.
>
> THE COURT: Okay, and you can make those arguments in State Court, right?
>
> . . . .
>
> THE COURT: . . . Everything in this case cries out for the Court to abstain in favor of the State Court proceeding, which your clients chose to go to when the case was still going on. Once a creditor says I want the bankruptcy court's jurisdiction to be limited and I want the stay to be lifted so I can go to State Court, that's your choice and so no it's not going well and you want the Court to get back involved.
>
> It's interesting that the issues you're raising didn't -- weren't raised when the bankruptcy case was still going on. . . . I find that there is no basis to reopen this Chapter 7 case. I'm going to abstain in favor of the State Court proceeding. All the arguments and issues you have you need to pursue in State Court.

Case No. 23-81213-CRJ7, Doc. 111, at 2-5 (Transcript of December 4, 2024 hearing). On December 4, 2024, Judge Jessup entered an order which denied the mortgage creditor's motion. The creditor appealed, and on March 26, 2025, the District Court entered its order which affirmed Judge Jessup's decision. *See* Docs. 77-1, 77-3, 77-4, 77-5. In affirming Judge Jessup, the District Court concluded:

> Section 350(b) of the Bankruptcy Code provides that a bankruptcy case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. § 350(b). "The ability to reopen a bankruptcy case is not a[n] automatic right but instead is left to the sole discretion of the bankruptcy court on a case by case basis looking at the particular circumstances and equities of that specific case." *In re Mohorne*, 408 B.R. 571, 576 (Bankr. S.D. Fla. 2009), *aff'd sub nom. Mohorne v. Beal Bank, S.S.B.*, 419 B.R. 488 (S.D. Fla. 2009) (citing *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542-43 (8th Cir. 2005)). The moving party bears the burden of establishing cause to reopen a bankruptcy case. *See In re Winburn*, 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996).
>
> "'When deciding whether to re-open a closed case, courts should generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the

Case 24-01850-TOM7    Doc 86    Filed 06/24/25    Entered 06/24/25 14:17:26    Desc Main
Document    Page 4 of 8

affected party, and other equitable factors.'" *Bank of America, N.A. v. Rodriguez*, 558 B.R. 945, 948 (S.D. Fla. 2016) (quoting *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011)); *see also In re Apex Oil*, 406 F.3d at 542 (holding it is within the bankruptcy court's discretion to reopen a case based on the particular circumstances and equities of each particular case). "Courts also consider the availability of an alternative forum for relief and the length of time between the closing of a case and the motion to reopen." *Id.* at 948-49 (citing *Mohorne*, 419 B.R. at 493 (in turn citing *In re Apex Oil*, 406 F.3d at 542-44 ("The availability of relief in an alternative forum is a permissible factor on which to base a decision not to reopen a closed bankruptcy case"))). Additionally, "'the longer the time between the closing the estate and the motion to reopen, the more compelling the reason for reopening the estate should be.'" *Id.* at 949 (quoting *In re Case*, 937 F.2d 1014, 1018 (5th Cir. 1991)).

    Here, the Bankruptcy Court did not abuse its discretion by denying Renasant's motion to reopen. After conducting a hearing on Renasant's motion to reopen, the Bankruptcy Court concluded that the Chapter 7 case was not due to be reopened and decided to abstain in favor of the ongoing state court proceeding. (Doc. # 3-6 at 5). The Bankruptcy Court reasoned that the state court was the proper court for Renasant to make its arguments – especially given that the issues Renasant raised in its motion (such as the duties Sanchez failed to comply with under the Bankruptcy Code) were not raised while the bankruptcy case was pending.

    Renasant has an ejectment action against Sanchez pending in the Circuit Court of Madison County, Alabama. *See Renasant Bank v. Sanchez*, Circuit Court of Madison County, Alabama, CV-2024-900882.00. The Circuit Court in Madison County is clearly an alternative forum where relief may be available to Renasant. *See In re Apex Oil*, 406 F.3d at 542-44. In light of all these circumstances, the Bankruptcy Court's decision not to reopen the bankruptcy proceeding was not an abuse of discretion.

*Renasant Bank v. Sanchez*, Case No.: 5:24-cv-01746-RDP, 2025 WL 923470, at *3 (N.D. Ala. March 26, 2025). According to both the Debtor's Amended Response and the Supplement (Doc. 79) to the Motion filed by Central State Bank in this Court on May 12, 2025, the District Court decision is currently on appeal to the Eleventh Circuit Court of Appeals.

Central State Bank asserts in its Supplement that the *Sanchez* case is distinguishable from the situation before this Court based on the underlying facts. On May 17, 2025 the Debtor filed an order from the state court that dismissed the Debtor's counterclaims against Central State Bank (Doc. 80), and two days later Central State Bank filed a Notice of Withdrawal of Motion to Reopen Case (Doc. 81) that did not contain any explanation as to why the bank was changing course. By

5

way of a text notice (Doc. 82) on the docket sheet, this Court informed Central State Bank that, pursuant to Rules 9014 and 7041 of the Federal Rules of Bankruptcy Procedure, it could not withdraw the Motion because the Debtor had filed her Amended Response before the Notice of Withdrawal was filed. At the hearing on the Motion, the Court asked counsel for Central State Bank why he decided to attempt to withdraw the Motion, to which counsel responded that "the ruling by the state court essentially took away most of the reasons I filed the Motion."[9] No other explanation was given. Central State Bank provided no witnesses or evidence in support of its Motion.

## **CONCLUSIONS OF LAW**

In its Motion Central State Bank requested that the bankruptcy case be reopened, ultimately for this Court to order that the Debtor surrender the residence to Central State Bank and directing the Debtor to cease the state court litigation. By asking for multiple forms of relief in addition to requesting the case be reopened, Central State Bank essentially put the cart before the horse; therefore, as already evidenced on the docket sheet, this Court is only considering the portion of the Motion requesting that the case be reopened.

Prior to this bankruptcy case being closed Central State Bank obtained relief from the stay, foreclosed on its collateral, and brought a state court action to obtain possession of the premises from the Debtor. In effect, by doing so, Central State Bank signaled that it no longer needed this Court to preside over its issues with the Debtor. In fact, foreclosure and eviction proceedings are state law remedies that the state court is perfectly suited to address.

---

[9] This attempted withdrawal of the Motion suggests that Central State Bank filed its Motion when the state court action either was not going its way or perhaps was not going fast enough to suit Central State Bank. Thus, once counsel for Central State Bank received a favorable ruling in the state court, counsel was content to continue litigating in that forum. Along the same lines, one must wonder if the attempt to reopen this bankruptcy case despite the ongoing state court litigation was an attempt to shop for a more favorable forum.

In the Supplement, Central State Bank attempts to distinguish the *Sanchez* bankruptcy case wherein Judge Jessup concluded that, in a case with remarkably similar facts, e.g., relief from the stay was obtained and a state court action regarding eviction was pending, there was no reason to reopen the bankruptcy case. Judge Jessup noted that the relief sought by the creditor in *Sanchez* could be pursued in the state court. On appeal Chief Judge R. David Proctor agreed, noting that "[t]he ability to reopen a bankruptcy case is not a[n] automatic right but instead is left to the sole discretion of the bankruptcy court on a case by case basis looking at the particular circumstances and equities of that specific case." *Sanchez*, 2025 WL 923470, at *3 (quoting *Mohorne*, 408 B.R. at 576). Chief Judge Proctor further noted that one factor to be considered is whether the relief sought may be had in a different forum. *Sanchez*, 2025 WL 923470, at *3.

This Court has reviewed Judge Jessup's Order denying the creditor's motion to reopen in *Sanchez* (Doc. 77-1 [Case No. 23-81213-CRJ, Doc. 101]), the transcript of the hearing wherein Judge Jessup put his reasons for the denial on the record (Case No. 23-81213, Doc. 111), and District Court Chief Judge Proctor's Memorandum Opinion and Order (Doc. 77-4 [Case No. 23-81213-CRJ7, Doc. 116]) affirming Judge Jessup's ruling. Despite Central State Bank's argument, the case before this Court is very similar to *Sanchez*, as both creditors sought and obtained relief from the stay to pursue state law remedies and in both state court cases, a counterclaim had been filed. The parties in this bankruptcy case are already involved in state court litigation, as were the parties in *Sanchez*. The Court in this bankruptcy case has even further reason to deny the Motion seeking to reopen this case, that being Central State Bank's attempt to withdraw its Motion. The state court is more than adequately equipped to handle issues of state law and the state court was Central State Bank's chosen forum. Further, even if Central State Bank had not attempted to withdraw its Motion to reopen the bankruptcy case, the circumstances and equities of this case weigh in favor of this Court denying the Motion in favor of the state court continuing with the case

7

pending there and finally resolving the issues Central State Bank raised in that court. This Court agrees with the reasoning of Judge Jessup and Chief Judge Proctor and concludes that the Motion is due to be denied. It is therefore

**ORDERED, ADJUDGED, and DECREED** that the Motion to Reopen is **DENIED**.

Dated: June 24, 2025 /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

8